IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| HEATHER JACKSON and ) <br> JAMES ALAN JACKSON, ) <br> ) <br>    Plaintiffs, ) <br> ) <br>                         ) <br> v.                                       ) <br> ) <br> GUILD MORTGAGE COMPANY, ) <br> ) <br>    Defendant. ) <br> ) | Civil Action No.: <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

NOW COME, Heather Jackson and James Alan Jackson, Plaintiffs herein, and file this, their Complaint for Damages against Defendant Guild Mortgage for violations of the Real Estate Settlement Procedures Act, and show this Honorable Court the following:

**PARTIES, JURISDICTION, AND VENUE**

1.

Plaintiffs Heather Jackson and James Alan Jackson are citizens of the State of Georgia and reside in Chatham County, Savannah, Georgia.

2.

Defendant Guild Mortgage is a California Profit corporation, with its principal place of business at 5887 Copley Drive in San Diego, CA 92111.

3.

Defendant Guild Mortgage maintains its registered office at C.T. Corporation System, 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia 30046 and may be served with Summons and Complaint at this address.

4.

Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 in that one of the counts within this complaint involves a federal question.

5.

Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) in that all of the events and omissions giving rise to these claims occurred in this district.

**OPERATIVE FACTS**

6.

Plaintiffs purchased a home located at 148 Penn Station in Savannah, GA 31410.

7.

Plaintiff took out a mortgage and promissory note with Guild Mortgage on August 23, 2021 which contains a clause requiring payment for certain items into an escrow account.

8.

Said "Escrow Clause" reads as follows:

> Funds for Escrow Items: Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property: (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items as called "Escrow Items." At origination or at any time during the terms of the Loan, Lender may require that Community Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

> Escrow Items at any time. Any such waiver may only be in writing, In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Item, for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items dircctly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to repay to Lender and such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Guild Mortgage Company, LLC's Security Deed is attached hereto as Exhibit A.

9.

The original homeowner's policy, number 481068805 for the Penn Station property was purchased through Northlight Specialty Insurance Company (hereinafter "Northlight") on August 19, 2021 and the policy was paid in full by the homeowners.

10.

On or about July 6, 2022, the administrator of the Northlight policy, Burns & Wilcox (hereinafter B&W) submitted an invoice to Guild Mortgage, indicating that payment on the 2022/2023 Northlight policy was due by August 19, 2022.

11.

On or about August 1, 2022, Plaintiffs received a request from B&W to approve the new Northlight policy. Plaintiffs approved the policy renewal on the same day.

12.

Sometime in mid-August, Plaintiff Heather Jackson received a call from her local insurance agent, Renee Cowart, with RB Insurance, LLC. Renee stated that payment had not been received for the new Northlight policy.

13.

Immediately following the telephone call with Renee Cowart, Plaintiff Heather Jackson called Guild Mortgage customer service to inquire as to why her homeowner's insurance renewal policy had not been paid. The Guild customer service representative assured Plaintiff that her issue would be sent to the Guild Insurance Department to review.

14.

As all times relevant to this Complaint, Plaintiffs have been and remain current on all payments on the mortgage, including amounts owed for Escrow Items.

15.

On September 24, 2022, Plaintiffs suffered a property loss due to a fire at her residence at 148 Penn Station which resulted in $392,000 worth of damage to the structure and a loss of $254,600 in personal property.

16.

When Plaintiffs attempted to file a claim with their homeowner's insurance policy, Plaintiffs were informed that their policy had been cancelled due to nonpayment of the insurance premium.

17.

It was later determined that the cancellation was due to an error by Guild Mortgage failing to pay Plaintiffs' homeowner's insurance renewal premium from their escrow account.

18.

When Guild Mortgage failed to pay the annual premium on the homeowner's policy, it resulted in a cancellation of Plaintiffs' insurance.

19.

Due to insurance cancellation, Guild Mortgage purchased force-placed insurance on Plaintiffs' home to cover Guild Mortgage's interest only.

20.

In early October 2022, Plaintiffs received an "Second and Final Notice" of no evidence of insurance coverage on the 148 Penn Station property from Guild, dated September 18, 2023. The postmark on the envelope was dated for September 30, 2022, six days AFTER the house fire. Guild Notice and Envelope attached hereto as Exhibit B.



21.

Plaintiffs never received any document from Guild identified as a First Notice that Plaintiffs' insurance coverage had expired.

22.

On October 17, 2022, Plaintiffs, through counsel, sent a Real Estate Settlement Procedures Act Notice of Error under 12 C.F.R. § 1024 to Guild Mortgage via certified mail return receipt requested to Guild Mortgage Company Attn: QA Dept. - Borrower Escalations 5887 Copley Dr. San Diego, CA 92111. Plaintiffs' Notice of Error is attached hereto as Exhibit C.

23.

Guild responded to Plaintiffs' RESPA Notice of Error on December 7, 2022, stating the following:

> The first call attempt was made on August 8, 2022, to obtain the renewal, as it had not yet been received and was set to renew on August 19, 2022. On that call no agents were available, so a voicemail was left requesting the renewal information. On August 16, 2022, a second attempt was made, and another voicemail was left. In addition, a fax request was sent requesting the renewal information. (encl.) On August 19, 2022, the first notice was mailed to the homeowner (NOR1) advising of the missing insurance information. (encl) On August 24, 2022, a phone call was made to Ms. Jackson regarding the needed policy renewal information. We were unable to reach her on the phone and the voicemail was full, so an email was sent to the email address on file. (encl.) On September 6, 2022, we spoke with Sam with North Light Specialty who transferred us to a voicemail, where the renewal information was requested, and another voicemail was left, and an additional fax request was sent. On September 18, 2022, the second notice was mailed to the homeowner (NOR2) advising of the expired insurance information. We had not received any renewal information and have not heard back from Ms. Jackson, so the lender placed policy was issued on October 4, 2022, for term dates of August 19, 2022 – August 19, 2023.

Guild's Response attached hereto as Exhibit D.

24.

Guild's RESPA response noticeably does not mention the renewal notice sent to Guild by B&W on July 6, 2023, nor does it mention the telephone call that Plaintiff Heather Jackson placed to Guild customer service in Mid-August, 2023.

Page 6 of 12

## THE REAL ESTATE SETTLEMENT PROCEDURES ACT

25.

The United States Congress, in enacting RESPA, found:

> The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a).

26.

Further Congress stated the purpose of RESPA:

> It is the purpose of this Act to effect certain changes in the settlement process for residential real estate that will result--
>
> (1) in more effective advance disclosure to home buyers and sellers of settlement costs;
>
> (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;
>
> (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and
>
> (4) in significant reform and modernization of local recordkeeping of land title information.

12 U.S.C. § 2601(b).

27.

RESPA defines a Qualified Written Request ("QWR") as follows:

> Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605e(1)(B).

28.

RESPA requires that a mortgage servicer respond to a homeowner's QWR in the following manner:

> Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

29.

Regulations promulgated under RESPA defines a "Notice Of Error":

(a) Notice of error. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. . . . A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

(b) Scope of error resolution. For purposes of this section, the term "error" refers to the following categories of covered errors:

. . .

(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

. . .

(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

. . .

(11) Any other error relating to the servicing of a borrower's mortgage loan.

12 C.F.R. § 1024.35(b).

30.

The mortgage servicer's duties after receiving a Notice Of Error are:

Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction,

> the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e).

31.

RESPA regulations require the following:

> Timely escrow disbursements required. If the terms of a mortgage loan require the borrower to make payments to the servicer of the mortgage loan for deposit into an escrow account to pay taxes, insurance premiums, and other charges for the mortgaged property, the servicer shall make payments from the escrow account in a timely manner, that is, on or before the deadline to avoid a penalty, as governed by the requirements in § 1024.17(k).

12 C.F.R. § 1024.34(a).

### **VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**

32.

Guild Mortgage Company failed to pay Plaintiffs' homeowner's insurance premium from Plaintiffs' escrow account.

33.

Failure to pay Plaintiffs' escrowed insurance premiums is an "enumerated error" as stated at 12 C.F.R. § 1024.35(b)(4), which states:

> Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

34.

Plaintiffs have been damaged by Defendant's RESPA violation, as Plaintiffs have not had the funds to repair their home from the damage suffered in the fire loss or the loss of personal property.

35.

Defendant, by failing to pay Plaintiffs' homeowner's insurance renewal premium in accordance with RESPA laws and regulations, is liable to the Plaintiff for actual damages to be proven by competent evidence. 12 U.S.C. § 2605(f)(1)(A).

36.

Defendant, by failing to pay Plaintiffs' homeowner's insurance renewal premium, has demonstrated a pattern or practice of noncompliance with the requirements of RESPA, is liable to the Plaintiff for additional damages in an amount not to exceed $2,000.00. 12 U.S.C. § 2605(f)(1)(B).

37.

Defendant, by failing to pay Plaintiffs' homeowner's insurance renewal premium, is liable to the Plaintiffs for the costs of this action, together with any attorney's fees incurred in connection with this action as this Court may determine to be reasonable under the circumstances. 12 U.S.C. § 2605(f)(3).

**WHEREFORE**, Plaintiffs respectfully requests that this Court:

a) Assume jurisdiction of this action;

b) Serve Defendant in manner prescribed by law;

c) Award Plaintiffs actual damages in an amount to be proven at trial and statutory damages in an amount up to $2,000 for each violation of RESPA committed by Defendant pursuant to 12 U.S.C. § 2605(f)(1)(B);

d) Award Plaintiffs the costs of this action, together with any attorney's fees as the court may determine to be reasonable under the circumstances pursuant to 12 U.S.C. § 2605(f)(3);

e) That Plaintiffs have a trial by jury; and

f) Award such other and further relief as is just and equitable.

Respectfully submitted, this 27th day of February, 2023.

**HURT STOLZ, P.C.**

/s/ James W. Hurt, Jr.
By: James W. Hurt, Jr.
Georgia Bar No.: 380104
*Pro Hac Vice applied for*

1551 Jennings Mill Road, Unit 3100B
Watkinsville, Georgia 30677
(706) 395-2750
Facsimile (706) 996-2576
jhurt@hurtstolz.com

**BOWEN PAINTER, LLC**

/s/ Paul W. Painter, III
By: Paul W. Painter, III
Georgia Bar No. 520965

308 Commercial Drive, Suite 100
Savannah, GA, 31406
(912) 335-1909
Facsimile: (912) 335-3537
paul@bowenpainter.com       **ATTORNEYS FOR PLAINTIFFS**